UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

AQUATIC POOLS, INC.,                                              No. 15-11406 t11

    Debtor.

## MEMORANDUM OPINION

Before the Court is Debtor's objection to Carol Ann Sanchez's ("Sanchez's") proofs of claim. Sanchez filed claims of $59,314 for wages and expense reimbursements. Debtor argues Sanchez provided no value to its company and in any event was paid more than she was owed. After considering all evidence and arguments, the Court finds that Sanchez has a non-priority, unsecured claim of $11,979.

## I.    FACTS

The Court finds:

Debtor installs and repairs swimming pools. Debtor employs a small staff in its Albuquerque, New Mexico headquarters and also employs field workers in New Mexico and surrounding states. Ron Yates owns and operates Debtor with the assistance of his father Glenn Yates.

In June 2014 Ron Yates called Sanchez to see if she could provide consulting services to the Debtor. He had heard about Sanchez from an acquaintance of his, Raymond Sanchez. Sanchez is Raymond Sanchez's ex-wife. Debtor had suffered financially because of the economic downtown, and also lacked normal accounting and financing procedures and controls. Debtor had lost its relationships with several banks, could not get a line of credit to finance day-to-day operations, and had to pay most of its expenses in cash.

On June 9, 2014, Debtor engaged Sanchez to provide management services, prepare job descriptions and an organizational chart, collect outstanding receivables, and get the business back on track. Glenn Yates also hoped Sanchez would use her business and banking contacts to help Debtor obtain a loan and a banking relationship. On or about June 11, 2014, the parties signed a two-page agreement outlining Sanchez's scope of services and compensation. Sanchez did not produce the document in discovery or at the final hearing. Glenn Yates remembered that the agreement entitled Sanchez to receive a fixed consulting fee that could have been as high as $90,000. However, when testifying about Sanchez's compensation, the parties all remembered a figure of $7,500 a month. The Court therefore finds Debtor orally agreed to pay Sanchez $7,500 a month (or $1,731 a week) in compensation for consulting services.[1] Sanchez worked for 19 weeks, earning $32,889.

Sanchez helped Debtor establish a new bank account at New Mexico Bank and Trust ("NMBT"). Sanchez and Yates were signatories on the new account. Several times a week, Sanchez wrote and cashed checks payable either to herself or to "cash." Sometimes she kept the entire amount, while sometimes she returned a portion to Ron Yates or Debtor's office manager, Felice Maes. On Mondays, Tuesdays, Fridays, and Saturdays, Ms. Maes would distribute the cash to Debtor's field workers for wages and anticipated out-of-pocket expenses for upcoming jobs.

Shortly after starting her consulting work, Sanchez and her domestic partner Patrick Glennon began using their personal credit cards to pay some of Debtor's expenses. Both also made personal loans to Debtor.[2] The loan totals are:

| Lender  | Amount  | Type of loan                                         |
|---------|---------|------------------------------------------------------|
| Sanchez | $32,009 | Charges to personal credit card for Debtor's expenses |

---

[1] The Court makes no determination whether Sanchez was an employee or independent contractor. The issue is not relevant to this dispute.

[2] They occasionally gave cash to Ron Yates, who used it to pay Debtor's expenses.

| Sanchez | $1,600 | Cash to Ron Yates for the benefit of Debtor |
| Glennon | $8,808[3] | Charges to personal credit card for Debtor's expenses |
| Glennon | $6,000 | Cash to Ron Yates for the benefit of Debtor |
| Total | $48,417 | |

Sanchez never received a normal paycheck from Debtor. For the most part, she paid herself by cashing checks drawn on the NMBT account, which she wrote and signed.[4] Once, Glenn Yates wrote Sanchez a $4,000 check on Debtor's behalf because Sanchez had reached her credit limit and wanted to attend a wedding in New York.

By October 2014, the relationship between Debtor and Sanchez had broken down. The Yateses decided that Sanchez had not accomplished enough, had not helped Debtor get a loan, and was too secretive about the NMBT checking account activity. When Sanchez left town for a vacation, Ron Yates went to NMBT and removed Sanchez's name from the NMBT account. Sanchez did not work with Debtor after that.

Because of the informal payment system described above, it is difficult to determine how much Sanchez is owed. Debtor's representatives asked Sanchez many times for an accounting, including copies of her and Glennon's bank statements. Sanchez provided some documents, but the bank statement copies were heavily redacted. At one point Raymond Sanchez met with Debtor's accountant to negotiate on Sanchez's behalf, but the parties were unable to agree on a figure without the requested bank statements. In response to the impasse, the Debtor took the position it did not owe her anything.

Debtor filed this case on May 28, 2015. Debtor did not schedule Sanchez's claim, provide

---

[3] Glennon used his card to pay three expenses for Debtor: $4,472 for utility block; $3,082 for utility block; and $984 for an airline ticket. Ron Yates asserted at trial that at least one utility block charge was reversed and that he never used the airline ticket. Glennon testified no charges were reversed. The Court accepts Glennon's testimony.

[4] The Court analyzes each check below, and incorporates that chart into the findings by reference.

her with notice of the bankruptcy, or send her a copy of the order setting a bar date for filing a proof of claim. The general claims bar date was September 4, 2015. Sanchez filed two claims on December 1, 2015: a $40,000 priority wage claim (Claim 14) and a $19,314 general unsecured claim (Claim 15). By a memorandum opinion entered May 27, 2016, the Court determined Claim 14 was not entitled to priority.

Sanchez now asserts she is owed $90,883, which includes all compensation, credit charges, and loans discussed above without any deductions for money she kept from the cashed checks.[5]

Debtor contends it owes Sanchez nothing. According to Debtor, the compensation agreement is unenforceable because it was not in writing; Sanchez provided no value to Debtor; and the amount of cash she received exceeded the expenses she and Glennon paid.[6]

## II. DISCUSSION

### A. The Oral Consulting Agreement is Enforceable.

Debtor's primary legal argument is that any oral agreement to pay Sanchez for consulting services is void under the statute of frauds. The argument fails. New Mexico has adopted the fourth section of the English Statute of Frauds, which states:

> 'no action shall be brought ... upon any agreement that is not to be performed within the space of one year from the making thereof; unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or some other person thereunto by him lawfully authorized.'

*Jennings v. Ruidoso Racing Ass'n*, 441 P.2d 42, 44 (N.M. 1968). Thus, "agreements not to be performed within one year are … void." *Skarda v. Skarda*, 536 P.2d 257, 261 (N.M. 1975).

---

[5] The Court finds that Glennon assigned Sanchez his right to collect from the Debtor. Because of their long-standing relationship, the Court will treat the claims of Glennon and Sanchez as a single claim.

[6] In its claim objection, Debtor also argued that Sanchez's claim was time-barred. However, Debtor abandoned that argument at trial, presumably because it never served Sanchez notice of the bankruptcy filing, bar date order, etc. *See In re Unioil*, 948 F.2d 678 (10th Cir. 1991).

-4-

Agreements for personal services, including employment, construction work, advertising, etc., do not need to be in writing if they can be performed within one year. *Professional Bull Riders, Inc. v. Autozone, Inc.,* 144 Fed. App'x 735, 737 (10th Cir. 2005) (oral sponsorship agreement could be performed within a year, and was not void under the statute of frauds);[7] *Kestenbaum v. Pennzoil Co.,* 766 P.2d 280, 283-284 (N.M. 1988) (at-will employment contract did not fall within the statute of frauds because it could be performed in under one year); *Leon v. Kelly,* 618 F. Supp. 2d 1334, 1341 (D.N.M. 2008) (oral partnership agreement was not void because it could theoretically be performed within one year); *Keeth Gas Co., Inc. v. Jackson Creek Cattle Co.,* 570 P.2d 918, 921 (N.M. 1977) (statute of frauds did not apply to oral contract to construct oil pipeline because it could be completed within one year). A contract with an express three year term, on the other hand, must be in writing. *Gonzales v. United Southwest Nat. Bank of Santa Fe*, 602 P.2d 619, 621 (N.M. 1979).

The oral agreement here -- under which Sanchez provided consulting services to Debtor in exchange for $7,500 a month -- was open-ended. It could be, and in fact was, performed within a year. The statute of frauds therefore does not bar enforcement of the agreement. Sanchez is entitled to $32,889 under the oral consulting agreement for 19 weeks of work.

B. The Accounting.

Aside from Debtor's statute of frauds argument, this contested matter hinges on how much Sanchez is owed. To calculate the claim amount, the Court used the following formula: A (total compensation) + B (total loans) − C (total reimbursements) = D (claim amount). The total compensation and total loan amounts are set out above.

---

[7] *Professional Bull Riders* applied Colorado law, which is not materially different than New Mexico's on this point.

1. <u>Total Reimbursement</u>. This figure is hard to calculate based on the trial evidence. Debtor offered a series of checks cashed by Sanchez to show that she received more than she was owed. Sanchez testified that she returned much of the cash to Debtor, but often could not remember the amount she returned in connection with any given check. Sanchez testified that she made copies of each check and kept a spreadsheet detailing the amounts she kept and the amounts she returned to Debtor. She referred to this spreadsheet often, but did not produce it at trial. The chart she did produce, Exhibit 3, is not very helpful because it does not include many of the checks she allegedly received.

The trial evidence showed:

| Date | Exhibit | Face Amount | Net Retained | Enough evidence about amount retained, if less than face amount? |
|---|---|---|---|---|
| *Checks to Sanchez* | | | | |
| 6/20/2014 | CC-6 | $2,000 | $2,000 | No. Sanchez admitted she kept all of the money. |
| 7/4/2014 | CC-7 | $2,492 | $2,492 | No. Sanchez admitted she kept all of the money. |
| 7/4/2014 | CC-7 | $4,000 | $4,000 | No. Sanchez said she returned some of the money but did not identify the amount. |
| 7/28/2014 | CC-8 | $4,000 | $4,000 | No.[8] |
| 8/29/2014 | P[9] | $900 | $900 | No. Sanchez could not remember what portion, if any, of the funds she returned, and her chart shows she kept the full amount. |
| 8/30/2014 | C | $6,000 | $3,000 | Yes. Sanchez testified she returned $3,000 to Ron Yates. |
| 8/30/2014 | L | $2,000 | $2,000 | No. Sanchez's counsel represented she kept the full amount, which her chart supports. |
| 9/2/2014 | D | $6,000 | $6,000 | No. Sanchez did not know whether or to what extent she returned any funds. |
| 9/2/2014 | E | $5,000 | $3,000 | Yes. Sanchez testified the check was partially for loans and partially for compensation, and her |

---

[8] In closing, Sanchez's counsel admitted she received the entire $4,000 check in Exhibit CC. Since there are two $4,000 checks in Exhibit CC, it is unclear to which check he was referring. In any event, there is insufficient evidence that she returned any funds from either $4,000 check.

[9] Unlike other exhibits, Exhibit P does not contain a second page with a receipt showing that the check was cashed. However, Exhibit H could be the second page to Exhibit P: It is a receipt without a check image showing that a $900 check was cashed on 8/29/2014. The only testimony on this issue was that Sanchez received a $900 check in August 2014. The Court therefore infers Exhibits H and P reflect the same $900 paid to Sanchez.

| | | | | |
|---|---|---|---|---|
| | | | | chart shows she returned $2,000.[10] |
| 9/4/2014 | I | $3,000 | $3,000 | No. Sanchez's counsel represented she kept the full amount, which her chart supports. |
| 9/8/2014 | J | $2,000 | $2,000 | No. Sanchez's counsel represented she kept the full amount, which her chart supports. |
| 9/9/2014 | R | $2,000 | $2,000 | No. The check was payable to cash, and Sanchez cashed it. It is unclear what amount, if any, was returned. |
| 9/11/2014 | M | $837.79 | $0 | Yes. Sanchez testified she did not receive any of the funds. |
| 9/12/2014 | S | $1,000 | $1,000 | No. The check was payable to cash, and Sanchez signed it. It is unclear what amount, if any, was returned. |
| 9/12/2014 | XYZ | $5,315 | $5,315 | No. Glenn Yates testified Sanchez received the funds as a credit card reimbursement. Sanchez testified she never received the check. The check was not proffered, but the Court finds Glenn Yates' testimony more credible on this point. |
| 9/13/2014 | U | $3,000 | $3,000 | No. The check is payable to "cash," and Sanchez signed it. Although the memo line says "Ron Yates Monday distribution," there was no testimony about what amount went to Yates versus Sanchez. |
| 9/15/2014 | Q | $3,500 | $1,000 | Yes. Sanchez testified that she met with field workers to deliver a portion of the funds, and her chart shows she returned $2,500. |
| 9/15/2014 | T[11] | $2,500 | $2,500 | No. The check is payable to "cash," and Sanchez signed it. Although the memo line says "Ron Yates distribution," there was no testimony about what amount went to Yates versus Sanchez. |
| 9/20/2014 | O | $6,000 | $3,000 | Yes. Sanchez thought she returned some of the funds; her chart shows she returned $3,000.[12] |
| 9/24/2014 | N | $500 | $500 | No. Sanchez testified she could have kept the entire amount. |
| 10/8/2014 | G | $2,000 | $2,000 | No. Sanchez testified it was difficult to tell how |

---

[10] Glenn Yates testified Sanchez received the entire $5,000 check when accusing Sanchez of reimbursing herself twice for the same expenses. However, Glenn Yates may not have known how much she returned, and Sanchez's evidence on this check is more concrete. The Court therefore finds Sanchez returned $2,000 and kept $3,000.

[11] The second page of Exhibit T shows the back of what appears to be a different check for $6,000 cashed on 10/2/2014. Unlike Exhibit H, it is unclear whether the second page of Exhibit T was meant to be a stand-alone exhibit. The Court therefore disregarded the second page of Exhibit T.

[12] The entry in Sanchez's chart is actually dated 9/19/2014 but clearly refers to this check. Further, although the chart accidentally omits the amount returned to Felice Maes and/or Ron Yates, it explicitly states she kept $3,000.

| | | | | much she kept. |
|---|---|---|---|---|
| 10/10/2014 | V | $1,900 | $400 | Yes. The check is payable to cash, and the memo line reads "payroll [ ] reimbursement Jeff 10/10/14." Sanchez's chart shows that she distributed $1,500 to Debtor's employees. |
| 10/14/2014 | W | $150 | $150 | No. The check is payable to "cash," and Sanchez signed it. There was no testimony that any funds were returned. |
| 11/03/2014 | CC-4 | $270 | $270 | No. Sanchez admitted she kept all of the money. |
| 11/10/2014 | F | $2,900 | $2,900 | No. Sanchez admitted she kept the entire amount, which her chart supports. |
| 11/10/2014 | K | $2,900 | $2,900 | No. Sanchez admitted she kept the entire amount, which her chart supports. |
| Late June or early July, 2014 | n/a | $4,000 | $4,000 | No. Glenn Yates testified he wrote Sanchez a personal check for $4,000 because she had reached her credit limit and was about to travel to New York. |
| *Checks to Glennon* | | | | |
| 9/20/2014 | AA | $5,500 | $2,000 | Yes. Sanchez and Glennon testified that Glennon only kept a portion of the funds; Sanchez's chart shows that he returned $3,500. |
| 9/27/2014 | BB | $8,000 | $4,000 | Yes. Glennon returned $4,000 to Ron Yates. |
| | | | | |
| | | **Total** | **$69,327** | |

The Court considered the following in calculating Sanchez's claim amount:

- The Court combined Claims 14 and 15 for purposes of its calculation since there was no way to determine how much Sanchez received for compensation versus loan repayments;

- The Court considered: (1) all checks in Exhibits C-W, AA, and BB; (2) any check to Sanchez in Exhibit CC, to the extent not duplicated in Exhibits C-W; (3) the line item in Exhibit XYZ identifying a $5,315 payment by Debtor to Sanchez;[13] and (4) Glenn Yate's testimony that he wrote a $4,000 check to Sanchez;

- For the most part, the Court disregarded the memo notations on the checks. The notations were often either blank or incorrect, reflecting Debtor's aspirational tax classification rather than reality;

---

[13] The Court considered that line item based on Glenn Yates' testimony that Sanchez received the $5,315 check. The remaining line items did not establish she received any checks. Further, the balance of Exhibit XYZ was admitted as a true and correct copy of Debtor's bank statements, not to show Sanchez received any specific amount.

- Where Debtor produced a check payable to Sanchez, Glennon, or "cash,"[14] the Court assumed Sanchez kept the entire amount unless she identified the specific amount she returned to Debtor, either through testimony or as a notation in her chart;

- The Court finds that any personal checks to Sanchez from either of the Yateses were written on Debtor's behalf, and that any loans from Sanchez or Glennon given to either were for the benefit of the Debtor;

- The Court did not, as Sanchez's counsel urged, attempt to estimate the average amount she returned to Debtor from the checks she cashed. Even if it were appropriate to do so (the Court is doubtful), there was not enough evidence to estimate an average.

The Court finds that Sanchez received $71,057 from Debtor.

    2.    <u>Final Calculation</u>. The claim amount is:

| | |
|---|---|
| A (total compensation) | $32,889 |
| + | |
| B (Total Loans) | $48,417 |
| - | |
| C (Total reimbursements) | <u>$69,327</u> |
| Claim amount | <u>$11,979</u> |

### III.    CONCLUSION

Based on the parties' unusual dealings and disorganized business practices, the amount of Sanchez's claim is difficult to determine. After reviewing the evidence and making its own calculations, the Court concludes Sanchez has an unsecured, non-priority claim for $11,979. A separate order will be entered.

 

*[signature]*

Hon. David T. Thuma
United States Bankruptcy Judge

---

[14] The Court finds Sanchez cashed the checks payable to "cash;" she signed each check, and they were written when she was in charge of obtaining cash from the NMBT account.

-9-
Case 15-11406-t11   Doc 150   Filed 08/26/16   Entered 08/26/16 09:04:45 Page 9 of 10

Entered: August 26, 2016

Copies to:

Nephi Hardman
6709 Academy NE, Ste. A
Albuquerque, NM 87109

James T. Burns
1801-B Rio Grande Blvd NW
Albuquerque, NM 87104